May it please the court, my name is Mark Wilhelm. I'm here on behalf of Appellant Hagelin Aviation Services. This is a case that arises out of delivery of basic functions to a remote village of Quigilingoc. It's a village off the west coast of Alaska on the Bering Sea. There are no roads to Quigilingoc. All essential services, medical care, food, are made accessible to this village by air service. It depends on air service for its very existence. The United States Congress, through the Bypass Mail Program, created a program to assure that villages like Quigilingoc and the hundreds of other villages in Alaska that rely solely on air transportation continued to receive that air service. If I can just jump into the jurisdictional issue, it's going to be hard for me to continue to listen to you about the merits unless we are satisfied that we actually can even rule on this case. I just want to give you that background to get to the jurisdictional issue. I'll just jump right into the jurisdictional issue. We know the background, so you can just jump right in. Right. The jurisdictional issue, as I understand it, is whether this case, this court has jurisdiction under Section 1447D, which provides for this court to have jurisdiction over a case that was removed under Section 1442. Well, it wasn't, right? The only notice of removal filed in this case most certainly did not assert 1442 as a basis for removal, and it didn't even provide the facts necessary to support that basis for federal jurisdiction. So that's where I'm just stuck right there at the outset, and I'd like you to walk me through why that's not a problem for us. I would respectfully disagree with your honor. Under Section 1446A, a notice for removal needs to contain a short and plain statement of the grounds for removal. This is a notice pleading requirement. We have that light EV crane company case out of the Ninth Circuit from last year, so it's like the same requirements apply to a complaint. Would Stone have had the same right to a federal officer defense as the aviation company? Yes. No difference between the two? No difference, because the claim against both was they were negligent for determining the land on this runway, which plaintiffs claimed was dangerous and defective. Stone doesn't have any relationship with the Postal Service, though, right? He's entirely an employee of Hagelin Aviation, but our position is he was carrying out a federal mandate of delivering air services. But what we have here in the Stone notice of removal is he said there was an allegation that the airport failed to meet federal standards, but that the federal government was aware of the condition of the runway, but nevertheless authorized or directed flights into the airport and paid carriers to carry mail to that airport, and that federal law should provide the standard of care. He did not mention 1442 in his notice of removal. We wish he had, but he didn't. But those are sufficient facts under a pleading standard under Section 1446A to provide notice under a complaint that this is a federal officer case. You go back to that Leike case again, there's the three requirements for federal officer jurisdiction. Had Hagelin been served at this point? No. Okay, could Hagelin have filed a notice of removal? If they've been named in the complaint but haven't been formally served, would they have been entitled to file a notice of removal? Once they were in federal court, you could not file a notice of removal with the state court because the state court no longer had jurisdiction. Once that notice of removal hits the state court, the state court loses removal. It's a federal court at that point. Our position is that their opposition to the motion for remand is the functional equivalent of a notice of removal in federal court. Do you know of any case in which somebody who's been named in the complaint but hasn't been formally served has filed a notice of removal to federal court? No. Nothing that's helpful to this court. I think there's cases where the court has accepted jurisdiction, but in terms of where there's a remand, I'm not aware of any case. What we have here is we have the stone notice of removal, which states we have the person requirement, we have the nexus requirement. I'm just looking at the stone notice of removal. Maybe you're going to point me to some different language. But the only place I see of any relevance looks like it's on page two. And all it says is the Federal Aviation Administration, right? Not the Postal Service. That's the basis for your federal officer removal claim. It says the Federal Aviation Administration and other federal agencies were aware of the condition of the runway and nevertheless authorized flights into the airport and indeed paid air carriers to carry mail to that airport. That's just focused on the FAA. I don't know how the district court was supposed to read that and understand, oh, no, you're saying that the Postal Service is the one that made you do this. It doesn't say that. But they would understand the FAA doesn't pay carriers to carry mail. So under the notice pleading standards in the Twombly case, I think this is sufficient. And then under Section 1653A, where there's a somewhat defective notice of removal, that then can be fleshed out in subsequent. Once Hagelin was served, would it have had another opportunity to remove? I've thought about that question, Your Honor. But was it served after Stone filed his notice of removal? It could not have filed the notice of removal. I mean, potentially it could have filed the notice of removal after the case was remanded back to state court. But I think that's something that really would be improper once the court had addressed federal officer removal, had denied it, then to go file it. Well, I think I thought what Judge Biby was asking was this. Your client was eventually served, I think it was? A day or two after the case was removed, yes. Right, okay. The case has already been removed. Your client gets served. You would have had 30 days within which to file your own notice of removal. You could have asserted additional grounds at that point beyond those that Stone had asserted in his notice of removal, and you didn't do that. Your Honor, you're correct. We could have filed something with the federal court at that point. That's where the notice of removal gets filed. You file it in the federal court. But it's not required to do a joinder. And I think 30 days would look like it. All I'm saying, though, hang on just one second. I just want to be clear on your position. You're saying that you didn't need to file a new notice of removal because Stone's notice of removal contained all that was necessary to invoke federal officer removal jurisdiction. That's your first position, right? That's my first position. Okay, and if we don't accept that, then you're saying that, in effect, when you filed the opposition to the motion to remand, that that, even though that was a pleading filed on behalf of your client, that, in effect, amended Stone's notice of removal? Is that your backup position? Well, both amended and acted as a separate notice of removal functionally, and we did not meet the 30-day requirement. But the 30-day requirement is not jurisdictional in my understanding. Nobody raised the 30-day question at the trial court level. So it's the type of thing that is waived if it's not raised, the fact that Hagelin raised its objections to the notice of removal. I mean, to the state court jurisdiction, more than 30 days later, when it filed its opposition to the motion to remand. I thought Hagelin wasn't served in its own name until less than 30 days before you filed the opposition. Am I wrong on that? Your Honor, I'd have to go back and take a look at the record again on that. I thought— Okay, we can look at it. I thought you were conceding away something that you don't need to. I'll rely on the record on that because I really don't want to concede something I don't need to. But to the extent there is a 30-day notice, my position is that that's not a jurisdictional issue. All right. I apologize for wasting all this time on the appellate jurisdiction. Maybe you should turn to the merits. No, you're not wasting my time because I'm interested in knowing what your concerns are. But you've got only five and a half minutes to address the merits, so maybe you should turn to that. Okay. The merits really are not complicated. You basically have, under the federal officer jurisdiction standard, there's three requirements. There needs to be a person, there needs to be the causal nexus, and there needs to be a colorable federal defense. I'm going to address the nexus thing because that's the reason that the district court denied federal officer jurisdiction in this case. Here we have the bypass mail system. Under the bypass mail system, the Department of Transportation put out these regulations. Anybody who carries more than 20% of freight or passengers into a village then is entitled to carry bypass mail as well. So this is a system where the federal government is paying carriers such as Hageland to carry bypass, to carry passengers and freight by rewarding them, by compensating them, by access to the bypass mail revenue. Does that then cover every flight they make, regardless of whether they're carrying mail? Yes, Your Honor, because it's a whole seamless program. The federal government is compensating Hageland for flying passengers out to the villages. It's compensating each of the carriers that participates. Well, isn't it a requirement that they be shuttling passengers and freight before they're eligible for this? If somebody was just flying into this village for pleasure or for their own business and not flying freight or passengers for hire, then they wouldn't be eligible to carry mail, would they? You're absolutely correct, but they need to continue carrying passengers and mail as well. As for continuing eligibility. Yes. Right, but it's a prerequisite, so it had to have been previously established. And somebody who's carrying passengers and freight wouldn't be obligated to carry mail, just because they were also carrying at least 20 percent freight and passengers, right? I don't believe they'd be obligated to carry mail, but these routes aren't profitable really unless you are carrying bypass mail. It's that additional revenue under the subsidized bypass mail program that makes all this air service available to the village at a somewhat reasonable rate. What makes this case different from other federal removal cases is you don't have a sole source contract. I mean, if there had been a sole source contract with Hageland to carry passengers out to Quiglengock, I don't think we'd really have a question of whether there was federal officer jurisdiction. What the federal government did here through its regulations is set up a requirements contract scheme. The regulations were the requirements that the air carriers accepted contract by performance. So you have a contract that was accepted by more than one air carrier, and the question ultimately is whether the fact that there was a requirements contract that more than one air carrier responded to keeps there from being a nexus. Our position is there is that federal nexus. The federal government mission in this case was delivery of freight passengers, bypass mail, to these remote landlocked villages. The federal mandate or requirement mission was to deliver mail to Quiglengock, so when you have the plaintiffs come on in and say that Stone and Hageland were negligent for flying on that route in the first instance and that Hageland indeed was reckless for agreeing to accept the federal government's offer to fly into Quiglengock, you there have that nexus that's required. I guess the only allegation of negligence that seems relevant to your claim here is that Hageland failed to properly respond to the hazardous physical condition of the runway. The federal government didn't order you or Stone, your client or Stone, to fail to properly respond to some hazard on the runway, so I don't even understand how you're saying that this was the relevant allegation of negligence is under the direction of a federal officer. The allegation was that flying into Quiglengock in the first instance was negligent. No, it's not. I just read to you the relevant. I'm looking at page, what is this? Page ER-157. It says approximate cause of the crash, one of them. There are others, but they're not even close to being relevant. The only one that's relevant says failing to properly respond to the hazardous physical condition of the, I can't say the name, Quiglengock runway. That's not saying that it was negligence to even think about flying into that airport in the first place. It just says that there was a hazardous condition on the runway that your client failed to properly respond to. I don't see where did the Postal Service or any other federal officers direct you not to properly respond to a hazardous condition on the runway. The allegations, and I believe they were in paragraph 36 and 39 of the complaint, would say that Hagelin was reckless for choosing Quig as a destination. I think that is sufficient, and I'm out of time, so I'm going to go sit down. Thank you. Okay. Thank you, Mr. Wilhelm. Mr. Wilhelm, we took quite a bit of your time. I will allow you one minute to respond. Mr. June? Thank you, Your Honor. May it please the Court, my name is Mark June. I represent Mr. and Mrs. Seitz in this case. As a preliminary matter, trial in state court is scheduled for July, and this court has agreed to rule on an expedited basis. I'd like to turn to the first question, and that is that appellate jurisdiction can only be based on Hagelin's 1442 federal officer arguments as opposed to the federal question. The first issue is whether this court has Section 1447 appellate jurisdiction if 1442 federal officer jurisdiction was raised for the first time in the opposition for remand. The answer is no. As you've said in your comments, the notice of removal made no reference to a federal officer, no reference to a federal mission, no reference to the post office directing the controlling or requiring operations into Quiglegic, which we refer to in a shorthand way as Quig. And at best, there was a tangential reference to mail in the notice. But you hadn't served Hagelin at the time. That's correct. So what did you expect them to do? What should they have done? Well, 1446B2C addresses the situation where defendants are served at different times, and a later served defendant can file something with the federal court. I don't know whether you would call it a supplemental notice of removal. I don't know whether you'd call it a joinder. So we don't really know what the form of that rule doesn't tell us what the form of that has to be? Correct, but the statute recognizes it. Why couldn't it be the form of a response? You actually didn't object to the response that Hagelin filed, and neither did the district court on its own motion. Well, actually, that sort of goes to the importance of the short and plain statement of jurisdiction and the various policies that it serves. It tells both the opposing party and the district court what the jurisdictional issue is. It triggers disclosure obligations, like whether the flight is actually carrying mail. It triggers the 30-day time. But you didn't object to that, did you? No, Your Honor, and my best answer to you is my best briefing isn't done in responding to new motions raised for the first time in an opposition. Right, but you had an opportunity to respond. You didn't complain that you didn't have an opportunity. You didn't complain that there was any kind of surprise or that they should have done something different. The district court treated it as though everything had been properly pled at the proper time and decided the thing on the merits. And I think that the point there, Your Honor, is that does not make an untimely action timely. It's true Judge Beistlein ruled anyway, but it does not change the underlying facts as to what Hagelin did or did not do. I'm sorry. I thought Hagelin was served on, is it August 20th? Their entry of appearance was on August 29th. Okay, but the date of service is what triggers the new 30-day window. Right, and I'm not finding that in the record before you. I'm not finding that, at least at the moment. And if it's there, I've missed it. Well, what date did you serve them? You don't know? I don't have an answer. Okay. I think it was August 20th or so. And if that's true, then when they filed their opposition to your motion to remand, it was within 30 days. If that is true and if the calendar plays out in the way that the court is saying, the calendar will speak for itself. Okay, but so just let's assume that those are the facts, so that there's no timeliness issue necessarily. Is it your argument that we can't look at the opposition of the motion to remand as, in effect, a new notice of removal asserting additional grounds? Yes, it is, Your Honor, because of the fact that it's supposed to. Wait, I didn't understand the yes, what? We can or cannot? Cannot. Cannot, because of the fact that the important policy reasons for the disclosure in the first place is things like triggering the disclosure obligations to say whether the aircraft is in carrying mail or not. And so when I responded, when I filed my reply, at that stage procedurally, Haglund had refused to provide discovery, had opposed discovery, and the jurisdictional facts under which we're arguing today were never disclosed at that time, weren't disclosed to the federal court. So what the district court had in front of it is it had purely Haglund's opposition and nothing more in which to make its decision. And the district court did substantively address the issue. He pointed that out. The only thing that's missing is that, at least in the first instance, the seats do not raise the timeliness issue. Does the district court have requested additional information? Why shouldn't we send this back to the district court then to make a full inquiry on a record? Why should you or should you not? Why shouldn't we? Because the district court ruled both on substantive grounds and procedural grounds. And in terms of the procedural grounds, I think you have all the information. Well, the procedural grounds were that they didn't have 1331 and 1332 jurisdiction. But the procedural grounds is the district court also went on to address the federal officer jurisdiction. Right. But it hasn't reached any of the questions as to whether, for example, whether they were carrying mail at the time or whether that's even relevant. Those questions were not reached. You didn't raise those objections. That's true, Your Honor. And the district court didn't come up with it on its own. And if we think that that's really important before we decide this question, then why shouldn't we send this back for an additional hearing? Actually, the district court did raise it on its own, and they had the opportunity to make a more complete record on that had they chosen to do so at the lower court level. You say the district court did address the question as to whether the plane was carrying mail? No, the district court did not. The district court looked at the brochure, the report that was provided, looked at the short affidavit from the client, and the district court subsequently ruled that based upon the showing made to it, there was no federal officer jurisdiction. The district court did say, even presuming that Hagelin and Stone were carrying mail and passengers under some federal direction, no superior subordinate relationship. That's correct. So we should assume in deciding this case that they were carrying mail. That's what the district court presumed. No, because we know today that they weren't. Is that in our record? It is, Your Honor, because we moved to take judicial notice of the fact, and that's a motion that's pending before you that you have in front of you, and you have the factual predicate for that. There's a motion pending in front of the panel to take judicial notice of the fact that they were not carrying mail, and that fact is undisputed as we stand before you today. I have seven minutes. I'd like to move to the substantive issues, unless the court has more questions regarding the procedural issues. Okay. The burden is on Hagelin to establish that there was federal officer jurisdiction. Factually, we know today that there was no mail freight on this flight. There was none delivered. There was none taken out. In terms of the showing that was made as to the federal officer jurisdiction, there was no suggestion of any contractual relationship between Cherie Seeds, the passenger in the Postal Service. She contracted separately to become a passenger. There was no evidence that was presented to the district court showing that flights to Quiglegic or Quig were specifically required in order for Hagelin to be paid to carry mail freight to other airports in Alaska. There was no contract documents that were presented at all in which the Postal Service set forth the flight performance requirements. There was no contract documents that were presented at all. There was no suggestion that the Postal Service directed that this flight be flown either at this time or any other time. And if you look at Hagelin's reply brief at page two, Hagelin itself concedes that it had 100 percent discretion as to where, how, when, and whether it flew passengers into Quig. Well, but not, I guess, your opponent has alleged in paragraph 36, as he just alluded to, that even allowing pilots to fly into that airport was a reckless or obviously a negligent act, right? And that their position, at least, is that they were required to service that airport as part of participating in this mail bypass program. Their position in arguing to you today was to say that they were required to use that airport. They presented no evidence to the district court that, in fact, that was the case. Is there another airport? Is there another runway there? No, there isn't, your honor. Let's say they were required to use the airport just for the purposes of argument. Required by the Postal Service. Yes. Okay. Does that make any difference? No, because the greatest amount of discretion in terms of an air carrier is the ability to say no. The greatest discretion on the part of an air carrier is the ability to say, here is how we will fly this particular flight in these particular circumstances. The greatest discretion in terms of the air carrier is everyone knows the weather conditions in Alaska, everyone knows the flight conditions in Alaska, and the ability to control those events lies exclusively with the pilot and the air carrier. When you go back to when you leave Anchorage and as you board the aircraft, most likely an Alaska Airlines jet, my guess is if you went to the pilot and say, well, I hope you're doing what the FAA or the Postal Service told you to do, the pilot would say, I'm just flying the aircraft, I'm going to do it, and so far I've never left anyone up there. You know, that's the discretion. The Postal Service does not tell people how to fly aircraft. And I would submit to you that based on the record before you, you have nothing, absolutely zero, to suggest that the Postal Service said that they had to fly to Quillegate. What you have is a brochure that's highly critical of what they call the bypass mail system. It's actually not mail at all. It's mail freight. You have an affidavit from the air carrier saying that the FAA permitted and approved flights to Quillegate, but nothing saying that flights to Quillegate were required. And you have a very complicated federal statute that talks about eligibility criteria for someone who's an air carrier in Alaska to have their operations subsidized. If we're talking about subsidies, I guess if I received a Medicare benefit, and I'm getting close to that, that maybe I would be on a federal mission of my own sort, or if I were bringing my tax return to the mailbox on, you know, April 15th, I'd be on my own federal mission according to the arguments that they're making. Well, you have to be a person operating under federal control. That's the standard. That's your argument. And my point is no one's operating under federal control because it's the pilot that makes the decision, and it's the air carrier that makes the decision, and no one has made any showing to Judge Beislein or to this panel saying that the Postal Service required this particular flight or any particular flight to Quillegate. You could opt out of flying to Quillegate, and it might affect your revenue, but you would still be operating under the same criteria for eligibility for this subsidy program. And, you know, when you talk about the contract, I realize I've harped on that. If you look at the main case that they cite on their behalf, it's the Presidential Airways case. It's the Afghanistan case. What you have is DOD saying you will fly these times, et cetera, and so on. Procedurally, I'm sorry for pointing, but you picked up on the basis of our complaint is they failed to respond to the known hazards of the runway there. Well, but you do have other broader allegations that say, basically, I'm looking now at paragraph 39, and I'm just going to use the shortened name, the Quig runway was not suitable for commercial passenger flight operations, period. Yeah, and that's under a Breach of Unfair Trade Practices Act claim, which is something very different than a negligence claim. No, I know, but the background for your— that you have a duty to share that information when you're entering into the contractual relationship with the passenger. That is not the negligence claim that they are spinning the pleading into meaning. Well, is this Unfair Trade Practices Act claim? I mean, that's—why wouldn't that still be part of the basis they can rely on for federal officer removal? That's a claim you've asserted against SAGLE, isn't it? It is a claim we've asserted, Your Honor. They're saying as a defense to that claim, we're going to rely on the fact that the federal government basically made us fly into that area? But they don't have that showing in front of you. They've never made that showing, that the Postal Service required them to fly to Quigley. The most showing that you have is if they fly to Quigley, their operations there will be subsidized under certain conditions. Yeah. If there is no mail freight, there is no causal nexus between the Postal Service operations and their air carrier operations. At best, what you have is Haglund Aviation is a federal— Well, except that it's a prerequisite to even qualify to carry mail, that you have to be carrying 20 percent passengers in freight. So if you're just flying in there on your own, you're just flying for your own purposes, you're not qualified from the outset. So you have to be flying freight and passengers in here in order to be qualified for the program. There is an eligibility criteria, but then we keep going back to under the— No, but you have to have some preexisting—you have to have some preexisting flights. You have to have a history. Right, going in here without carrying mail. So I'm not sure what the fact is that you weren't carrying mail on this particular flight, whether that's fatal to the case. All right, I'm over my time. Please answer the question and sum up. I think what it comes down to is under any scenario, Haglund is at best an independent contractor, which is comparable to the Mesa v. California case and the Cabalchi C-A-B-A-L-C-E case. Thank you. Okay. Thank you, Mr. June. Mr. Wilhelm, I've given you an additional minute. Thank you, everybody. First of all, to correct, the date of service is in the record. If you look at the record at page 50 in the Mike Haglund affidavit, we were served July 12, 2012. So that's there in the record. There's no—to address some of the other points, there's no requirement that you have to cite a statute in the notice of removal. All you need to do is cite facts. A second counsel's right to section 1446B-2C, but that really relates to the case where the second party removes the case. There's no applicability here. Finally, we have sufficient federal control here, and the federal mandate is that there has to be mail service to these remote Alaska villages, which cannot exist. A plaintiff would argue that we should not have flown into Quig in the first place, and that allegation so directly conflicts with a federal mandate that federal office or jurisdiction should lie here. Okay. Thank you, Mr. Wilhelm, Mr. June. Thank you both for the argument. The case is submitted.
judges: Canby, Bybee, Watford